UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL LAWSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. |
| | ) | |
| ACQUITY GROUP LLC and | ) | |
| CHRISTOPHER J. DALTON, individually, | ) | |
| | ) | |
| Defendants. | ) | **Jury Demand** |

## COMPLAINT

NOW COMES Plaintiff, MICHAEL LAWSON, by and through his attorneys, ABRAHAMSON VORACHEK & LEVINSON, and complains of Defendants, ACQUITY GROUP and CHRISTOPHER J. DALTON, individually, as follows:

### PARTIES AND JURISDICTION

1. Plaintiff brings this action to remedy violations of Section 1981 of the Civil Rights Act of 1866, as amended by the Civil Rights Act of 1991, 42 U.S.C. §1981, and for pendant state relief for a violation of the Illinois Wage Payment and Collection Act.

2. Plaintiff is an African-American and a resident of Chicago, Illinois.

3. Defendant Acquity Group LLC (hereafter "Acquity") is a Delaware corporation engaging in the business of ecommerce and digital marketing. Its U.S. headquarters and principal location is in Chicago, Illinois.

4. At all relevant times herein, Defendant Christopher J. Dalton (hereafter "Dalton") was President and Chief Executive Officer of Defendant Acquity Group. Upon information and belief, Defendant Dalton is a resident of McHenry County, Illinois.

5. This Court has jurisdiction of this matter pursuant to 42 U.S.C. §1981 and 28 U.S.C. §1331. This Court has jurisdiction over state supplemental claims pursuant to 28 U.S.C. §1367.

6. Venue of this action lies in the Northern District of Illinois pursuant to 28 U.S.C. §1391(b) because all of the unlawful actions alleged herein occurred in this district.

## BACKGROUND FACTS

7. Plaintiff joined Acquity Group in May 2010 as a Director. Throughout his employment, Plaintiff performed his job satisfactorily.

8. During Plaintiff's employment, high producing revenue accounts were reserved for non-African Americans, regardless of experience or ability. Plaintiff was only one of two African American Directors (out of more than 50), and there were no African Americans at any level above Director.

9. In December 2011, after a reorganization, Todd Schwarz (Caucasian), Vice President, became Plaintiff's supervisor and business leader.

10. At various times between December 2011 and May 2012, after Schwarz became Plaintiff's supervisor, Plaintiff complained about not receiving large revenue-producing accounts and asked Schwarz to place him on such accounts to help him meet revenue goals. Schwarz took no action to do so.

11. In May 2012, Plaintiff was assigned to be the Engagement Manager (EM), a leadership role, on the Thermo Fisher account, which was a small account at that time. Despite

2

Plaintiff's leadership title on the account, he was immediately marginalized by Paul Jakaitis, Caucasian, who worked on the account as the Client Partner. Plaintiff was excluded from meetings, excluded from critical emails and other communications, and cut out of key development decisions. It was apparent to Plaintiff that his role was much more limited than the role of an EM, and he questioned these limitations, although to no avail. The limitations on his role continued to create confusion with the client and undermined Plaintiff's authority and credibility.

12. In July 2012, out of the blue, Plaintiff received by email a "draft" Performance Improvement Plan (PIP). The PIP covered areas of improvement in subjects about which Plaintiff had previously complained, including the difficulty of meeting revenue goals when he was not being assigned productive accounts. On July 13, 2012, Plaintiff questioned management — including, among others, Schwarz and Karen Jackson, Senior Vice President of Human Resources — about receiving a PIP by email. He was told that it was sent in error. Later, Plaintiff was told that there was no support for the PIP, that there had been "missteps." When asked, Schwarz was not able to give Plaintiff a reason for the "draft" PIP.

13. To Plaintiff's knowledge, prior to receiving the "draft" PIP, there had been no complaints about his job performance.

14. In July 2012, Plaintiff told Schwarz and Jackson that he was the victim of continuing race discrimination. Beginning on July 19, 2012, and continuing through his termination, Plaintiff complained in writing about racial bias and retaliation for having complained about said bias on more than fifteen (15) occasions. These complaints were addressed to Jackson and Defendant Dalton, and sometimes to other members of management.

15. Plaintiff was advised that an investigation into his allegations would follow.

3

16. Following his complaints of race discrimination, Plaintiff was continually subjected to retaliation and further discrimination, including being excluded from a key dinner with Thermo Fisher executives and from both internal and external meetings relating to the Thermo Fisher account. His requests for assistance, help with the account, and for relief from the bias and retaliation went unanswered. Upon information and belief, Defendant Dalton was aware that Plaintiff's complaints and requests for assistance and relief were going unanswered.

17. In August 2012, Plaintiff was told that Defendant Acquity had concluded its investigation and that no racial bias had been found.

18. In Fall 2012, following several more complaints of racial bias and retaliation, Plaintiff was advised of a second investigation of his complaints of racial discrimination.

19. On or about November 30, 2012, Plaintiff met with Karen Jackson to discuss the results of the second investigation. He was allowed to read the investigation summary, which was error ridden and mischaracterized his concerns. Again, Defendant Acquity did not find itself guilty of discrimination and retaliation. During the same meeting, Jackson told Plaintiff that he should be "cautious" about making claims. She expressed her concern about the "careers" of those named. Plaintiff assured Jackson that he did not make frivolous allegations, and he later informed her and Defendant Dalton that he intended to take his race discrimination complaints to an outside agency.

20. The very next business day, December 3, 2012, in a meeting that included Jackson and Schwarz, Plaintiff was told that he was being replaced as leader on the Thermo Fisher account by Robert Hallberg (Caucasian). Defendant Dalton knew about and condoned and/or participated in the decision to replace and demote Plaintiff.

21. During the same meeting, even though it was close to the end of the year, Plaintiff was told that he would not get any revenue credit for his work on Thermo Fisher, which significantly

4

impacted his fourth quarter bonus and end of year bonus for the significant revenue credit and work on the Thermo Fisher account. At the end of the meeting, Plaintiff was told that he was being placed on a PIP. He was instructed to seek out and get staffed on junior level assignments and roles. Plaintiff was also presented with a severance package as an alternative to the 60-day PIP. Defendant Dalton knew about and condoned and/or participated in the decision to place Plaintiff on a PIP, to withhold his bonus, and to offer Plaintiff a severance package in exchange for a general release of claims.

22. The PIP was designed to ensure that Plaintiff would not be able to successfully complete it. The PIP required Plaintiff to have technical/product knowledge for which he had requested training earlier in the year, when such requests had been ignored. Although he had been demoted to a more junior level, Plaintiff was still required to meet his former (higher) position's metrics as part of the PIP requirements. The PIP required that Plaintiff perform billable work assignments, but he was not approved for or assigned to any billable work. When Plaintiff tried to get work assigned to him, he was told that because the first quarter of the year is usually slow for getting assignments, it was unlikely that he would be assigned any billable work. The failure of management to assign Plaintiff to work made it impossible for him to meet his goals.

23. Plaintiff responded to the PIP. At that time and on numerous occasions thereafter, he requested clarification of the PIP. Plaintiff pointed out that the objectives and requirements of the PIP were vague, internally inconsistent, and/or did not make any sense. For example, besides the actions outlined in Paragraph 22, *supra*, Plaintiff was to be held to tasks, standards, and timelines which could only be achieved by a manager with actual assignments and/or involvement with business development pursuits. Plaintiff subsequently learned that his requests and concerns were

5

not shared with his manager, Schwarz, who was supposed to be administering the PIP. Jackson also failed to address the obvious problems with the PIP.

24. After Mr. Hallberg took over Plaintiff's role on the Thermo Fisher account, he was specifically given some of the support that Plaintiff had requested, and which had been denied to Plaintiff, including, *inter alia*, Defendant Dalton's participation on the account.

25. On or about December 14, 2012, by way of a letter, Plaintiff, through his counsel, again complained to Defendant Acquity that he was a victim of racial discrimination and harassment and had been retaliated against for having previously raised these concerns to management at Defendant Acquity.

26. On January 16, 2013, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC). The Charge was sent directly to Defendant Acquity's counsel on January 16, 2013.

27. On January 24, 2013, about one week after Plaintiff filed his Charge of Discrimination and before the end of his PIP, he was fired. Upon information and belief, Defendant Dalton condoned and/or participated in this decision.

28. At the time Plaintiff was presented with his termination paperwork, he was told by Tammy Crosby, Vice President of Human Resources, that his termination would not impact his eligibility to receive his fourth quarter bonus and/or end-of-year bonus. Later, Plaintiff was told in writing by Jackson that he would not be getting either his fourth quarter bonus or his year-end bonus for his work on Thermo Fisher during the entire fourth quarter of 2012. His end-of-year bonus was also adversely impacted because he was denied credit for the Thermo Fisher account. Upon information and belief, Defendant Dalton condoned and/or participated in this decision.

29. As a result of Defendants' actions, Plaintiff has suffered humiliation, embarrassment, emotional and physical trauma, loss of enjoyment of life, and lost income, benefits, and other compensation.

## COUNT I
## SECTION 1981 - RACE DISCRIMINATION
## (ACQUITY GROUP)

Plaintiff brings Count I against Defendant Acquity.

30. Plaintiff repeats and realleges Paragraphs 1-29 as though fully set forth herein.

31. Defendant Acquity intentionally subjected Plaintiff to adverse employment actions, including limiting Plaintiff's employment opportunities, placing Plaintiff on a PIP, denying Plaintiff bonuses, replacing Plaintiff on the Thermo Fisher account and then demoting Plaintiff, and terminating Plaintiff's employment.

32. None of the adverse actions taken against Plaintiff, including his termination, were for any legitimate business reason.

33. By taking these adverse actions against Plaintiff, including termination, Defendant intentionally discriminated against Plaintiff because of his race, African-American, in the enjoyment of all the benefits, privileges, terms and conditions of his contractual relationship with Defendant Acquity, in violation of 42 U.S.C. §1981.

34. By intentionally taking adverse actions against Plaintiff, including terminating him, Defendant acted with malice and/or with reckless indifference to Plaintiff's federally protected rights, in violation of 42 U.S.C. §1981.

WHEREFORE, Plaintiff prays for judgment in his favor and against Defendant Acquity as follows:

a) that a finding be entered that Defendant Acquity intentionally discriminated against Plaintiff because of his race, in violation of 42 U.S.C. §1981;

b) that Plaintiff be awarded all wages, benefits, and other compensation lost due to Defendant's intentional discriminatory conduct;

c) that Plaintiff be awarded compensatory damages;

d) that Plaintiff be awarded punitive damages in excess of $1,000,000;

e) that Plaintiff be awarded reasonable attorneys' fees and costs;

f) that Plaintiff be awarded prejudgment interest; and

g) that Plaintiff be awarded such other relief as this Court may deem just and proper.

## COUNT II
## SECTION 1981 — RETALIATION
### (ACQUITY GROUP)

Plaintiff asserts Count II against Defendant Acquity.

35. Plaintiff repeats and realleges Paragraphs 1-34 as though fully set forth herein.

36. Following Plaintiff's first complaints to Defendant Acquity, and continuing through his termination, Defendant Acquity engaged in a pattern of retaliatory conduct, including further limiting Plaintiff's employment opportunities, placing Plaintiff on a PIP, denying Plaintiff the compensation due to him, and terminating Plaintiff.

37. By engaging in the foregoing conduct, Defendant Acquity intentionally retaliated against Plaintiff because of his complaints about racial discrimination and interfered in Plaintiff's enjoyment of all the benefits, privileges, terms and conditions of his contractual relationship with Defendant Acquity, in violation of 42 U.S.C. §1981.

38. By engaging in the foregoing conduct, Defendant Acquity acted with malice and/or with reckless indifference to Plaintiff's federally protected rights, in violation of 42 U.S.C. §1981.

WHEREFORE, Plaintiff prays for judgment in his favor and against Defendant Acquity as follows:

a) that a finding be entered that Defendant Acquity intentionally retaliated against Plaintiff on the basis of his complaints about racial discrimination and harassment with malice and/or with reckless indifference to Plaintiff's federally protected rights, in violation of 42 U.S.C. §1981;

b) that Plaintiff be awarded all wages, benefits, and other compensation lost due to Defendant Acquity's discriminatory conduct;

c) that Plaintiff be awarded in excess of $100,000 in compensatory damages;

d) that Plaintiff be awarded $3,000,000 in punitive damages;

e) that Plaintiff be awarded reasonable attorneys' fees and costs;

f) that Plaintiff be awarded prejudgment interest; and

g) that Plaintiff be awarded such other relief as this Court may deem just and proper.

### COUNT III
### SECTION 1981 — RACE DISCRIMINATION
### (CHRISTOPHER DALTON)

Plaintiff brings Count III against Defendant Christopher Dalton.

39. Plaintiff repeats and realleges Paragraphs 1-29 as though fully set forth herein.

40. Beginning as early as July 2012, and continuing through Plaintiff's termination, Defendant Dalton, through both his actions and inaction, condoned and/or participated in the discriminatory decisions against Plaintiff because of Plaintiff's race. By engaging in this conduct,

Defendant Dalton intentionally discriminated against Plaintiff because of his race in the enjoyment of all the benefits, privileges, terms and conditions of his contractual relationship with Defendant Acquity, in violation of 42 U.S.C. §1981.

41.     By intentionally taking adverse actions against Plaintiff, including termination, on the basis of his race, Defendant Dalton acted with malice and/or with reckless indifference to Plaintiff's federally protected rights, in violation of 42 U.S.C. §1981.

WHEREFORE, Plaintiff prays for judgment in his favor and against Defendant Dalton as follows:

a)     that a finding be entered that Defendant Dalton intentionally discriminated against and harassed Plaintiff because of his race, African-American, in violation of 42 U.S.C. §1981;

b)     that Plaintiff be awarded all wages, benefits, and other compensation lost due to Defendant Dalton's intentional discriminatory conduct;

c)     that Plaintiff be awarded compensatory damages;

d)     that Plaintiff be awarded punitive damages in excess of $1,000,000;

e)     that Plaintiff be awarded reasonable attorneys' fees and costs;

f)     that Plaintiff be awarded prejudgment interest; and

g)     that Plaintiff be awarded such other relief as this Court may deem just and proper.

## COUNT IV
## SECTION 1981 — RETALIATION
## (CHRISTOPHER DALTON)

Plaintiff asserts Count IV against Defendant Christopher Dalton.

42.     Plaintiff repeats and realleges Paragraphs 1-29 and 39-41 as though fully set forth herein.

43. Beginning as early as July 2012, and continuing through Plaintiff's termination, Defendant Dalton, through both his actions and inaction, condoned and/or participated in the retaliation against Plaintiff because of Plaintiff's complaints about race discrimination and harassment.

44. By engaging in the foregoing conduct, Defendant Dalton intentionally retaliated against Plaintiff because of his complaints about racial discrimination and interfered in Plaintiff's enjoyment of all the benefits, privileges, terms and conditions of his contractual relationship with Defendant Acquity, in violation of 42 U.S.C. §1981.

45. By engaging in the foregoing conduct, Defendant Dalton acted with malice and/or with reckless indifference to Plaintiff's federally protected rights, in violation of 42 U.S.C. §1981.

WHEREFORE, Plaintiff prays for judgment in his favor and against Defendant Dalton as follows:

a) that a finding be entered that Defendant Dalton intentionally retaliated against Plaintiff on the basis of his complaints about racial discrimination and harassment with malice and/or with reckless indifference to Plaintiff's federally protected rights, in violation of 42 U.S.C. §1981;

b) that Plaintiff be awarded all wages, benefits, and other compensation lost due to Defendant's discriminatory conduct;

c) that Plaintiff be awarded in excess of $100,000 in compensatory damages;

d) that Plaintiff be awarded $3,000,000 in punitive damages;

e) that Plaintiff be awarded reasonable attorneys' fees and costs;

f) that Plaintiff be awarded prejudgment interest; and

g) that Plaintiff be awarded such other relief as this Court may deem just and proper.

## COUNT V
## ILLINOIS WAGE PAYMENT & COLLECTION ACT — BONUS CLAIM

Plaintiff brings Count V against both Defendants.

46.     Plaintiff repeats and realleges Paragraphs 1-29 as though fully set forth herein.

47.     At all times pertinent hereto, Plaintiff was an employee of Defendant Acquity within the meaning of that term under the Illinois Wage Payment & Collection Act ("IWPCA"), 820 ILCS 115/2 (1993), in that Plaintiff was hired to perform certain duties for Defendant Acquity under its control and direction.

48.     At all times pertinent hereto, Defendant Acquity was an employer within the meaning of the IWPCA, 820 ILCS 115/2 and 820 ILCS 115/13 (1993) and Defendant Dalton was an officer of Defendant Acquity.

49.     The IWPCA, 820 ILCS 115/1, et seq., requires employers to pay in full at the time of separation the final compensation of separated employees, including all compensation owed to an employee pursuant to a contract.

50.     The IWPCA, 820 ILCS 115/13, also mandates that officers of a corporation who knowingly permit an employer to violate the provisions of the IWPCA shall be deemed to be employers of the employees of the corporation.

51.     At the time of his termination, Plaintiff was not paid all compensation owed to him pursuant to his bonus plan. Specifically, Defendants failed and refused to pay Plaintiff his fourth quarter and end-of- year bonuses pursuant to the terms of the bonus plan.

52.     As a result of Defendants' failure to pay Plaintiff the amounts due to him pursuant to the IWPCA, Plaintiff has suffered pecuniary losses.

12

53. Upon information and belief, Defendant Dalton, acting in his capacity as President and CEO of Defendant Acquity, knowingly permitted the company to violate the IWPCA by refusing to pay Plaintiff the fourth quarter and end of the year bonuses due to him.

54. The amount due to Plaintiff is easily computed, and the interest due on the unpaid bonuses owed to Plaintiff pursuant to 815 ILCS 205/2 (1993) began on February 1, 2013 and February 13, 2013, respectively, and continues to accrue until paid.

55. More than three days prior to instituting this lawsuit, Plaintiff served a written demand on both Defendants for payment of the salary, severance, and benefits owed to him.

WHEREFORE, Plaintiff prays for judgment in his favor and against Defendants as follows:

a) that this Court find that Defendants violated the IWPCA by not paying Plaintiff the fourth quarter and end-of-year bonuses due to him pursuant to the bonus plan;

b) that this Court find that, as President & CEO of Acquity Group, Defendant Dalton knowingly permitted Defendant Acquity to violate the IWPCA and, thus, he is an employer of Plaintiff within the meaning of the IWPCA;

c) that this Court order Defendants Acquity Group and Christopher Dalton (jointly or severally) to pay Plaintiff the bonuses owed to him pursuant to his bonus plan;

d) that this Court assess all applicable civil and criminal penalties to all Defendants, as enumerated in the IWPCA, 820 ILCS 115/15 (1993);

e) that this Court order Defendants to pay all costs and attorneys' fees Plaintiff has incurred, pursuant to the Attorneys Fees in Wage Actions Act, 705 ILCS 225/1 (1993);

f) that this Court award prejudgment interest pursuant to 815 ILCS 205/2 (1993); and

g) that this Court order such other relief as it may deem just and proper.

Plaintiff demands trial by jury on all counts of his Complaint.

                                            Respectfully submitted,

                                            /s/ Vicki Lafer Abrahamson


Vicki Lafer Abrahamson
Caroline E. Rdzanek
ABRAHAMSON VORACHEK & LEVINSON
120 North LaSalle Street, Suite 1050
Chicago, Illinois 60602
(312) 263-2698

Attorneys for Plaintiff

DATED:     May 31, 2013